IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| KIM KUTZNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-03473-CV-S-NKL |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff Kim Kutzner's Social Security Complaint [Doc. # 3]. For the following reasons, the Court AFFIRMS the decision of the Administrative Law Judge.

**I.    Background**

This case involves a claim for Disability Insurance benefits under Title II of the Social Security Act., 42 U.S.C., §§ 401, *et seq*. Plaintiff Kutzner contests the Defendant's findings that he is not disabled.

Kutzner filed for disability benefits on September 30, 2009, alleging a period of disability beginning January 2, 2001,[1] when a steel beam fell on him at work, and lasting until December 31, 2006. Kutzner's application was administratively denied, and his

---

[1] To be entitled to disability benefits under Title II of the Act, a claimant has the burden of showing that he was disabled prior to the expiration of his insured status. 20 C.F.R. § 404.130; *Moore v. Astrue,* 572 F.3d 520, 522 (8th Cir. 2009). Here, Kutzner's insured status under Title II expired on December 31, 2006. Consequently, the relevant time period for consideration in this case is from January 2, 2001, through December 31, 2006.

1

case was heard by an Administrative Law Judge ("ALJ"). On March 1, 2011, the ALJ denied Kutzner's application. In September 2011, the Social Security Administration's Appeals Council denied his request for review, and Kutzner appealed to this Court.

### A. Medical Record

Kutzner was diagnosed with low back strain on January 2, 2001, after a steel beam fell on him while he was working as a mechanic. Subsequent MRIs revealed that Kutzner had intervertebral narrowing and a herniated disc. Kutzner had a series of appointments weekly for the next few months, in which Kutzner was diagnosed with low back pain with mild radiculopathy and administered an epidural steroid injection. The epidural helped with Kutzner's radiculopathy, but his back pain continued. His treating physicians recommended that rather than pursue surgical intervention, Kutzner should engage in conservative treatment such as physical therapy. In June 2001, Kutzner enrolled in a two-week rehabilitation program at the University of Iowa. The rehabilitation coordinator at the program, Ted Wernimont, noted, "I have no question that this man is absolutely sincere and honest in his desire to get well, but the pain, frustration, anxiety and fear of this situation has become a major component in his pain." TR-337. After completion of the program, Kutzner's treating physicians wrote out a schedule for Kutzner's gradual return to work. However, in September 2001, Kutzner reported worsened back and leg pain, and his treating physicians determined that Kutzner was unable to return full-time to his previous employment due to pain. One of his treating physicians, Dr. Found, determined that Kutzner possessed the following work capacity: ability to lift no more than 45 pounds no more than four times an hour; ability

to lift 20 pounds repetitively; ability to only occasionally bend, reach, and stoop; and ability to stand no longer than one hour without a five minute break to stretch and change position. In October 2001, Dr. Joseph Chen at the University of Iowa recommended that Kutzner immediately cease his employment with his previous employer as his injury prevented him from performing the significant repetitive motion required. In November 2001, Kutzner was examined by medical examiner Dr. McMains for an insurance assessment. Dr. McMains noted that Kutzner "continued to limit his activity and express pain behavior far exceeding his industrial injury." TR-348. There are no other records of medical treatment until 2008.

### B. Claimant's Testimony

Kutzner testified at the hearing that during the alleged period of disability he experienced constant back pain on a scale of seven out of ten. He stated that walking, bending, and twisting make the pain worse; that he can sit or stand for 45 minutes at a time before needing to lie down to relieve his back pain; and that he can comfortably walk about 100 feet. He further stated that he could comfortably lift ten pounds frequently. He also stated that he does therapy exercises every day, which helps a little bit with the pain. He does minor household chores such as food preparation and light vacuuming, but that he has pain putting on socks and shoes and does not shop for groceries because of the walking required.

### C. The ALJ's Decision

The ALJ found that Kutzner was not under a disability as defined in the Social Security Act. He determined that although Kutzner had the severe impairment of

3

disorders of the lower back, he did not have an impairment or combination of impairments listed in or medically equal to the Listed Impairments in 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ further determined that Kutzner retained the Residual Functional Capacity ("RFC") to occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; walk/stand for two hours in an eight-hour day; sit for six hours in an eight-hour day; occasionally climb stairs; occasionally stoop, crouch, kneel, or crawl; and occasionally push/pull with his lower left extremity.  Kutzner could never climb ropes, scaffolds, or ladders, and required work that did not demand attention to detail or complicated instructions.  Based on this RFC and the vocational expert's testimony, the ALJ found that Kutzner's impairments would not preclude him from performing work that exists in substantial numbers in the national economy.

## II. Discussion

### A. Legal Standard

To establish disability, a claimant must prove that he is unable to engage in substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of 12 months or more.  *See* 42 U.S.C. § 423(d).  In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision "is supported by substantial evidence in the record as a whole."  *Muncy v. Apfel*, 247 F.3d 728, 730 (8th Cir. 2001); *see also Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).  "Substantial evidence" is less than a preponderance, but must be sufficient for a reasonable mind to find it adequate to support the conclusion.  *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004); *see also Krogmeier v.*

4

Case 6:11-cv-03473-NKL   Document 14   Filed 11/14/12   Page 4 of 10

*Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The Court must consider evidence that detracts from as well as supports the ALJ's decision. *Black v. Apfel*, 143 F.3d 383, 385 (8th Cir. 1998). If the substantial evidence makes it equally possible to form two opposite conclusions, one of which accords with the ALJ's findings, the Court is obligated to affirm the ALJ's decision. *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *see also Finch*, 547 F.3d at 935.

### B.      Whether the ALJ Properly Formulated the RFC

Residual Functional Capacity ("RFC") is defined as "the most a claimant can still do despite his or her physical or mental limitations." *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (internal quotes omitted). A claimant's RFC is assessed based on the totality of the relevant evidence in the case record, "including medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations." *Id*. This assessment also takes into account the combined effect of both "severe" and "not severe" impairments, as well as the individual claimant's susceptibility to pain. 20 C.F.R. § 404.1545(e).

The ALJ determined that based on the evidence in the record, Kutzner possessed the RFC to perform sedentary work with some restrictions, as discussed above. Kutzner argues that because the ALJ did not specifically include the limitation on reaching noted by his treating physician in the hypothetical presented to the vocational expert, his RFC was not properly formulated. He also argues that the ALJ unduly discounted his subjective complaints of pain. The Court finds that the ALJ properly considered the

5

medical evidence and Kutzner's credibility, and as such the RFC determination was proper.

### *1. Whether the ALJ Properly Considered the Medical Evidence*

Kutzner contests that the ALJ failed to give substantial weight to the opinion of his treating physician, Dr. Found, specifically with regards to Dr. Found's assessment that Kutzner was limited to only occasional reaching. In determinations of disability, the treating physician's opinion is given "controlling weight," absent inconsistencies or where supported by "more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1012, 1013 (8th Cir. 2000) (internal quotes omitted); *see also Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ's decision conducts a step-by-step assessment of Kutzner's medical record during the relevant period. Although the ALJ rarely mentions Dr. Found by name, it is clear that the information from the record that he discusses was drawn from Dr. Found's medical reports. Where the ALJ specifically references findings of a medical source, the Court can assume the ALJ considered the medical source's opinion. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

The ALJ also discusses in depth the records of other treating physicians, including Dr. Mouw, who saw Kutzner several times for back pain in 2001, and the physicians at the University of Iowa Hospital, where Kutzner participated in a rehabilitation program in June 2001. These physicians kept careful records of Kutzner's progress and limitations. Although they noted Kutzner's restrictions on reaching, they did so in the

6

Case 6:11-cv-03473-NKL   Document 14   Filed 11/14/12   Page 6 of 10

context of the strenuous, repetitive reaching required by Kutzner's previous employment as a mechanic,[2] and did not recommend a limitation on all reaching whatsoever.

Additionally, the ALJ engaged in a detailed discussion with Kutzner about his limitations at the hearing, during which Kutzner failed to mention specific limitations on reaching. To the contrary, Kutzner testified that he is capable of pushing a light vacuum and prepping food for cooking, both activities that involve occasional reaching. The Court therefore finds that the ALJ's decision not to include a restriction on reaching in the RFC was substantially supported by the evidence in the record.

### 2. *Whether the ALJ Properly Assessed Plaintiff's Credibility*

The ALJ found that Kutzner's credibility was adversely affected by the lack of medical evidence supporting his subjective complaints of pain and the absence of treatment records after 2001. As a result, the ALJ determined that Kutzner's symptoms were not credible to the extent they were inconsistent with the RFC discussed above.

An ALJ may not disregard a claimant's subjective complaints of pain based solely on the lack of objective evidence. *Finch*, 547 F.3d at 935. In analyzing a claimant's subjective complaints of pain, the ALJ must take into account "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black*, 143 F.3d at 386 (referencing *Polaski v. Heckler,* 739 F.2d

---

[2] *See* TR-360 (noting that Kutzner's attempt to return to work has resulted in "increased pain based on long periods of standing and some bending, reaching and stooping which is required"); TR-359 ("Mr. Kutzner continues with significant increase of pain due to what he describes as a great deal of repetitive motion, reaching forward over large bins every minute to two minutes to secure 10 to 15 pound jigs.").

7

Case 6:11-cv-03473-NKL   Document 14   Filed 11/14/12   Page 7 of 10

1320, 1322 (8th Cir. 1984)); *see also Finch*, 547 F.3d at 935; *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). However, the ALJ may also determine that a claimant's subjective complaints are not credible based on inconsistencies between the complaints and medical evidence in the record. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007); *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002). In the instant case, the ALJ relied on inconsistencies between Kutzner's complaints of pain and the medical record to determine that Kutzner's subjective complaints were not credible. The Court finds that the ALJ's determination was supported by the medical record.

Although Kutzner saw a number of physicians for back pain after his injury in early 2001, these physicians consistently noted that although Kutzner appeared to be in some pain, he did not require surgery, TR-261, 377, and could engage in employment subject to restrictions on lifting, repetitive motion, and bending. TR-358-61. Kutzner's physicians at the University of Iowa noted in October 2001 that Kutzner was limited to six hours of work a day at his old job, but emphasized that Kutzner's injury did not prevent him from engaging in other gainful employment. TR-325. For instance, Dr. Joseph Chen at the University of Iowa recommended that Kutzner cease his employment because he was unable to perform the significant repetitive motion required, but noted that "we have advised Mr. Kutzner that he is indeed 100% employable, but not in his current job situation." TR-358. Furthermore, Kutzner returned to work several months after his injury, and worked between four and six hours a day there. TR-33, 343. Although he testified that he was in significant pain from this exertion, the fact that Kutzner could work reduced hours at a strenuous job supports the ALJ's conclusion that

8

he was capable of full-time sedentary work.  Finally, the medical examiner, Dr. McMains, noted that Kutzner's subjective complaints of pain were disproportionate to his injury and that Kutzner appeared to self-limit out of fear of re-injury.  TR-348.  Although the opinion of a consultative physician who examines a claimant only once is not considered substantial evidence, where the opinion is consistent with that of the treating sources, the ALJ may consider such an opinion as part of totality of the medical record. *See Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001).  The Court finds that substantial evidence in the record supports the ALJ's determination that Kutzner's subjective complaints of pain were belied by the medical evidence.

Additionally, the ALJ concluded that Kutzner's claims lacked credibility because of the absence of treatment records between 2001 and 2006.  The ALJ noted that "there was no evidence of any treatment attempts, including physical therapy, epidural steroid injections, or even medication management for his lower back injury after 2001."  TR-17.  Failure to pursue medical treatment may adversely affect a claimant's credibility. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (concluding that "if [claimant's] pain was as severe as she alleges, [she] would have sought regular medical treatment").  The Court agrees with the ALJ that in this case, failure to pursue any medical treatment after 2001 indicates that Kutzner's pain was not as severe as he alleges.

## III.   Conclusion

The Court finds that the ALJ's RFC determination was supported by substantial evidence in the record.  As such, the vocational expert's testimony that there were sufficient jobs in the national economy which Kutzner could perform is entitled to

9

substantial weight. *McKinney v. Apfel*, 228 F.3d 860, 865 (8th Cir. 2000). The ALJ's denial of disability benefits to Kim Kutzner was therefore proper, and the decision is AFFIRMED.

                                                s/ Nanette K. Laughrey
                                                NANETTE K. LAUGHREY
                                                United States District Judge

Dated: November 14, 2012
Jefferson City, Missouri